# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| TARRIANCE DAVIS, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:15-cv-00234-CAR-CHW |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Tarriance Davis' application for benefits. 42 U.S.C. Section 405(g). Because substantial evidence does not support the Commissioner's decision, it is **RECOMMENDED** that this case be **REMANDED** pursuant to "sentence four."

## BACKGROUND

Plaintiff Tarriance Davis filed an application for Disability benefits on May 24, 2011, (R. 182), alleging disability since September 19, 2010, due to uncontrolled diabetes, hypertension, neuropathy, kidney/groin area, knee and foot pain, and hand tingling/pain. It was determined that Plaintiff suffered from diabetes, peripheral neuropathy, hypertension, dysfunction of major joints, and loss of vision but his claim was denied initially and on reconsideration. (R. 92 - 104). A hearing was held in front of Jim Fraiser, an administrative law judge (ALJ), on November 26, 2013 (R. 25). The ALJ issued a decision denying Plaintiff's appeal on January 8, 2014, (R. 19), which the Appeals Council declined to review on May 11, 2015. (R. 1). Plaintiff now appeals to this Court.

1

**STANDARD OF REVIEW**

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

**EVALUATION OF DISABILITY**

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."

*Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## THE MEDICAL RECORD

The medical and opinion record in this case consists of the following: Plaintiff's initial evaluation and reconsideration (55, 78 - 104), the Administrative Hearing in front of the ALJ (25 - 45), various disability reports and questionnaires (R. 200 – 238), a Request for Medical Advice (R. 306), a source statement from Dr. Al-Wawi (362 – 363), and medical records from Comprehensive Care Medical (R. 262 – 269, 312, 314 - 329), Houston Medical Center and related entities (270 – 289, 332 - 360), and the Southeastern Internal Medical Associates. (R. 290 – 305).

A large portion of the medical record in this case consists of treatment notes from Comprehensive Care Medical Offices, LLC where Plaintiff was treated by his primary care physician, Dr. Mousa Al-Wawi. Notes from Dr. Al-Wawi and his associates span the record from April 2010, (R. 266), until August 6, 2013. (R. 314). Unfortunately, Dr. Al-Wawi's handwriting is, at many points, almost entirely undecipherable. The forms Dr. Al-Wawi uses also contain pre-determined options which can be circled. Unfortunately, the circles employed to endorse any given option are larger than the font on the forms. The circles encompass multiple options and are largely unhelpful. Neither Plaintiff nor Respondent attempted to cite to Dr. Al-Wawi's record with any level of specificity or detail.

With this limitation in mind, the medical record in this case begins on April 5, 2010, when Plaintiff initially met with Dr. Al-Wawi after transferring care from his Doctor in Perry, Georgia. (R. 267). Plaintiff presented with diabetes, high blood pressure, and blurred vision. Dr. Al-Wawi ordered a urinalysis, which detected increased ketones, ascorbic acid, and glucose. (R.

267). An ECG was also ordered, which revealed "nonspecific T wave abnormality," abnormal ECG," and a "septal infarct." (R. 268 – 69). Plaintiff returned in November 2010 complaining of dizziness and pain in his knees and feet. (R. 265). His blood pressure was 180/138, his blood glucose was 498, and he was given Clonidine without positive results at which point Dr. Al-wawi sent Plaintiff to the Emergency Room. *Id*. Plaintiff had lost 30 pounds since his previous visit. Plaintiff returned in February 2011, complaining of needle like pain in his feet, and was assessed with an unknown neurological problem. (R. 264). His blood pressure was found to be 150/95, 153/100, and 126/84 while his blood glucose was 315. (R. 264). Plaintiff's symptoms improved in March, and he was prescribed an unknown medication. (R. 263). Three months later in June 2011, Plaintiff presented with neuropathy and numbness, but his Blood Sugar was 164 and his Blood Pressure was 118/80. Dr. Awawi indicated a neurological abnormality and prescribed Tramadol. (R. 262). Plaintiff weighed 185 pounds.

    On August 9, 2011, Plaintiff presented with a level three urgent admission to the hospital complaining of bilateral leg pain and dizziness. (R. 270). Plaintiff indicated that he has daily pain as well as neuropathic flare-ups which he rated as 10/10. Plaintiff's blood pressure was 215/140, and he was given Lantus, Hydrochlorothazide-Linsinopril, Gabapentin, and Tramadol.. (R. 270). Lab draws were unremarkable except for calcium levels, and Plaintiff had a normal physical exam. (R. 274). He was released in a wheelchair, advised not to drive, and instructed to schedule outpatient follow-ups. (R. 274). At discharge Plaintiff was diagnosed with "alterations in comfort, alterations in health maintenance, and pain" (R. 274) and was prescribed Lorcet Plus and Norvasc. (R. 277). Plaintiff returned to the Emergency Room on August 25, 2011, complaining of weakness, dizziness, pain from the waist down, numbness, and throbbing in his right hand. (R. 279). Plaintiff rated his pain as 10/10, his blood pressure was 150/102, and he

4

reported taking Lorcet Plus, Lantus, Lisinopril, Lyrical, and Humulin. *Id*. Plaintiff later stated that his "maximum symptoms are moderate" and relieved by nothing. (R. 280). Plaintiff was ambulatory at discharge later that afternoon and was prescribed Lortab pursuant to a diagnosis of chronic leg pain and dizziness. (R. 285). A CT scan of Plaintiff's head was stable (R. 286), but he had increased glucose and creatinine levels with reduce calcium, albumin, and myoglobin levels. (R. 287 - 288).

On November 8, 2011, Plaintiff went to the Southeastern Medical Associates to undergo an all systems exam. Plaintiff complained of pain in his feet, ankles, hips, hands, and lumbar spine. His reported pain level was 5/10 while taking Vicodin. (R. 290). Plaintiff also reported stiffness, difficulty standing, walking, bending, and stooping, a history of sharp sudden pains in his chest for the past 2 years, and kidney dysfunction for the past 8 years. (R 290 – 291). Plaintiff's blood pressure was 172/132, and his visual acuity in his right eye was 20/70. Plaintiff ambulated with a slow and small gait, did not use his abdominal muscles during respiration, and had a systolic ejection murmur and S4 gallop. (R. 291 – 292). Neurologically, Plaintiff had sensory loss pursuant to neuropathy or stenosis and abnormal left sided reflexes, but he had normal grip strength and unrestricted use of his hands. (R. 292). Plaintiff also had normal range of motion. Dr. Stanley Wallace, the examining physician, assessed Plaintiff's physical capacity as follows:

> The following is based on medical findings and not on the basis of subjective opinions, subjective complaints or work experience: Due to the diagnosed impairments, the person cannot be expected to perform even sedentary functions because this person cannot be expected to lift more than ten (10) pounds, sit no more than (4) hours and stand or walk no more than one (1) hour per eight hour work day.

(R. 294).

In January 2012, Plaintiff again presented to Dr. Al-Wawi with hand and leg pain as well as numbness; he weighed 198 pounds. In March, Plaintiff complained of bilateral pain below his hip and reported non-compliance (R. 322). In July, Plaintiff returned for a medication refill and complained of sleep loss. (R 319). At this time, Dr. Al-Wawi switched to electronic treatment notes, giving the first full (and legible) description of Plaintiff's treatment. (R. 318). Plaintiff suffered from "severe diabetic peripheral neuropathy," increasing pain and numbness limiting his daily activities and ambulation and insomnia. (R. 318). Plaintiff had decreased sensation in both lower and upper extremities. (R. 318). His prescriptions included Neurontin, Mobic, and Vicodin. *Id.*

On October 22, 2012, Plaintiff returned to Dr. Al-Wawi with blood pressure of 158/108 and a weight gain of 3 pounds. (R. 317). He had been seen in the Emergency Room two weeks earlier because he had run out of medication and had elevated blood sugar. After another ER visit in early 2013, Plaintiff again followed up with Dr. Al-Wawi. (R. 316). Plaintiff continued to complain of persistent pain and numbness in both hands and feet with objective findings of decreased sensation. Plaintiff's final two follow ups show the same reports and treatments, and Dr. Al-Wawi believed that patient was noncompliant with his medications. (R. 314-315).

On August 6, 2013, Dr. Al-Wawi provided the following statement concerning Plaintiff's functional level:

> Terrance Davis is a patient of mine. He has been unable to work since 2008 due to his medical conditions. He has been diagnosed with severe uncontrolled diabetes mellitus, severe peripheral neuropathy, hyperlipidemia and severe hypertension.

(R. 312). In November 2013, Dr. Al-Wawi completed a disability questionnaire stating that Plaintiff suffers from severe pain, neuropathy, decreased sensation, and uncontrolled diabetes. (R. 362). Plaintiff "has a very hard time walking for lengthy times, cannot walk up stairs without

6

pain, and his blood sugar is always out of control." In Dr. Al-Wawi's opinion, Plaintiff had been disabled since April 5, 2010. (R. 363). In July 2013, Plaintiff returned to the ER with acute chest pain, but an "echo revealed preserved LV systolic function." (R. 335). Plaintiff had "moderate concentric left ventricular hypertrophy" (R. 342) and "physiological pericardial effusion." (R. 343).

## DISABILITY EVALUATION IN THIS CASE

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since September 19, 2010. (R. 13). At step two, the ALJ found that Plaintiff suffered from the following severe impairments, "diabetes mellitus, neuropathy, and edema" (R. 13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 14). The ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform the following:

> Claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift (10) pounds occasionally and less than (1) pounds frequently. The claimant can stand and/or walk for two (2) hours at 20-minute intervals. He could sit for six (6) hours at 2-hour intervals. The claimant can occasionally climb, balance, stoop, and crouch but could not kneel and/or crawl. He can perform push/pull movements of less than ten (10) minutes with the right upper extremity. The claimant cannot use foot controls with lower extremities. He should avoid exposure to extreme temperatures, chemicals, dust, and fumes. The claimant has occasional numbness and cannot feel texture with the lower extremities.

(R. 14-15) At step four, the ALJ determined that Plaintiff could not perform past relevant work. (R. 18). At step five, the ALJ determined that Plaintiff could perform work as a "call out operator," "surveillance system monitor," and a "dowel inspector." (R. 19). Thus, the ALJ

7

determined that Plaintiff was not disabled from September 19, 2010, to the date of his decision. (R. 19).

## ANALYSIS

Plaintiff argues that the ALJ erred at step three, four, and five of the sequential process. At step three, Plaintiff argues that substantial evidence does not support the ALJ's findings and RFC because the ALJ inappropriately discredited the opinions of Dr. Al-Wawi and Dr. Wallace. Both physicians assessed Plaintiff as disabled. At step four, Plaintiff argues that the ALJ did not accurately identify Plaintiff's past work experience. At step five, Plaintiff argues that the ALJ made multiple errors related to whether Plaintiff can perform other work existing in the national and local economy as required by 20 CFR § 404.1560(c)(2). Because the ALJ did not properly consider Dr. Al-Wawi's treatment record, and because good cause does not support discrediting Dr. Wallace and Dr. Al-Wawi's opinion while affording substantial evidence to an agency reviewer, the Commissioner's decision is not supported by substantial evidence.

    i.    <u>Discrediting Doctor Al-Wawi and Doctor Wallace</u>

"An administrative law judge must accord 'substantial' or 'considerable' weight to the opinion of a claimant's treating physician unless 'good cause' is shown to the contrary. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). When a treating physician merely opines on the plaintiff's ability to work or gives vague opinion, such evidence is not entitled to deference. And an opinion "on an applicant's RFC is not a medical opinion, but rather a decision

8

reserved to the Commissioner." *Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010). However, "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. "When the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1981).

In this case, two doctors provided a total of three opinions stating that Plaintiff suffers from a disabling level of disease. As discussed and quoted at length above, Plaintiff's primary treating physician, Dr. Al-Wawi, unequivocally stated on two occasions that Plaintiff cannot perform even sedentary work and is disabled. A consulting examiner, Dr. Wallace, stated the same after performing a full physical examination on Plaintiff. The ALJ discredited both opinions and afforded substantial weight to an agency reviewer instead. This conclusion is not supported by substantial evidence.

With regard to Dr. Wallace, the ALJ concluded that his opinion "that the claimant could not perform even sedentary work appeared inconsistent with the objective medical examination." (R. 17). Substantial evidence does not support this conclusion because the ALJ failed to identify what aspects of Dr. Wallace's opinion were inconsistent with his "objective" medical findings, and the medical record does not directly contradict his opinion. Further, it was error for the ALJ to afford substantial weight to an agency reviewer's contradictory findings. The ALJ did not articulate "good cause" for preferring the reviewer's opinion and failed to recognize several catastrophic limitations with that opinion.

With regard to Dr. Al-Wawi's opinion, the ALJ again concluded that his opinion was inconsistent with his own treatment notes. This conclusion is inadequate for multiple reasons. First, the ALJ did not adequately consider the medical record associated with Dr. Al-Wawi. Second, the ALJ declared Dr. Al-Wawi's opinion inconsistent by string citing the doctor's entire medical record and providing no level of specificity or explanation. Third, Dr. Al-Wawi supported his opinion with multiple diagnoses which are clearly established in the medical record.

### a. Dr. Wallace

Dr. Wallace performed an all systems exam and determined that Plaintiff suffered from peripheral neuropathy with sensory loss, reduced reflexes, pain with motion in the lumbar spine, deviations in calf size, reduced abdominal muscle function, and a heart murmur. Based on these findings, Dr. Wallace opined that Plaintiff can be expected to lift no more than ten pounds, sit no more than four (4) hours and stand or walk no more than one (1) hour in an eight hour work day. (R. 294). The ALJ rejected this opinion as follows:

> The undersigned gives substantial weight to the findings from the objective medical examination, but finds that the residual functional capacity assessment given by Dr. Wallace that the claimant could not perform even sedentary work appeared inconsistent with the objective medical examination. Therefore, little weight is given to his opinion regarding the claimant's residual functional capacity assessment, as it is inconsistent and did not address the claimant's noncompliance.

(R. 16).

While it is not entirely clear, it appears, and Respondent argues, that the ALJ rejected Dr. Wallace's opinion because his examination found a normal range of motion, full grip strength, full use of hands, and lack of joint inflammation. These findings prompted Dr. Wallace to state that Plaintiff is not restricted in his use of hands for either heavy or small work. Dr. Wallace also

10

determined that Plaintiff could dress himself, open a door, make change, and button a shirt. None of these findings, however, directly contradicts Dr. Wallace's assessment of Plaintiff's limited ability to lift, sit, and stand. Furthermore, absent any explanation whatsoever, the ALJ's conclusion that Dr. Wallace's opinion generally "appears inconsistent" with his "objective medical examination" does not constitute good cause to discredit that opinion. See *Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 418 (11th Cir. 2015) (ALJ affording little weight to physician's opinion on basis of inconsistency with the record as a whole was erroneous where the opinion was not directly contradicted).

> Immediately following the discussion of Dr. Wallace, the ALJ stated:
>
> The claimant's medical records were also reviewed by a state agency medical consultant for a residual functional capacity (RFC) assessment. Dr. Karen Sarpolis stated that the claimant's hypertensive heart disease and diabetes mellitus with neuropathy resulted in less than a full range of sedentary work wherein he could stand/walk for two hours and sit for six hours. She also opined that the claimant could perform occasional climbing ramps, stair, ladders, ropes, and scaffolds. The claimant could also occasionally crawl. She noted that he should avoid concentrated exposure to extreme cold, heat, humidity, and respiratory irritants (fumes, odors, poor ventilation). The findings appeared to be based on the findings of the consultative examination in November 2011.

*Id*. The ALJ did not explain why he preferred Dr. Sarpolis' interpretation of Dr. Wallace's examination to Dr. Wallace's interpretation. To the extent that the ALJ simply preferred the agency reviewer's opinion over Dr. Wallace's own examination, he has committed error. "The opinions of nonexamining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.[1]" *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

---

[1] Respondent argues that Dr. Wallace, a one-time examiner, is not entitled to "special weight." While the opinion of an examining physician is not entitled to the same weight as a treating physician, it is well established that the "opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining

It was also an error for the ALJ to afford substantial weight to Dr. Sarpolis. The ALJ concluded his discussion of Dr. Wallace and Dr. Sarpolis by stating:

> While [Dr. Sarpolis'] opinion is not based on an examining medical source, it is given substantial weight as it was based on a thorough review of the objective medical evidence by a specialist who knows SSA evidentiary requirements and provided comprehensive explanations based on the evidence of record.

(R. 17). These findings are not supported by evidence in the record. Dr. Sarpolis' opinion was based on a review of very limited information. Her opinion cites only to Dr. Wallace's report and one treatment note from Dr. Al-Wawi.[2] Dr. Sarpolis also incorrectly concluded that Plaintiff had no past treatment for his "arthalgias" or a significant history of hypertension. Dr. Al-Wawi, however, had been treating Plaintiff for hypertension, neuropathy, and diabetes since 2010. Plaintiff routinely complained of "needles," pain, and numbness associated with neuropathy and was being treated appropriately. Plaintiff also had a clear history of high blood pressure levels. (R 262, 264, 265, 266). Dr. Sarpolis cited Dr. Al-Wawi's treatment note from June 20, 2011, when Plaintiff's blood pressure was 118/80, and concluded that Plaintiff did not suffer from hypertension. Plaintiff's blood pressure was 174/127 in April 2010, (R. 266), 180/140 in November 2010, (R. 265), 126/84 in February 2011, (R. 264), 148/84 in March 2011, (R. 263), 158/102 in August 2011, and 158/80 in September 2011 (R. 328).

Dr. Sarpolis' lack of access to Plaintiff's medical history is particularly important because she rejected many of Dr. Wallace's findings because they were not supported by a history of treatment. Dr. Sarpolis apparently believed that Dr. Wallace found limitations primarily pursuant to Plaintiff's cardiac problems. She then rejected the limitations upon deciding that Plaintiff had no history of cardiac problems. First, Plaintiff's cardiac disease was

---

physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir.1981)).

[2] Dr. Sarpolis' "discussion" of these two medical records is word-for-word identical to a November 16, 2011, "discussion of evidence and issues involved" completed by Daniel Edge. (Compare R. 305 with R. 306).

only one of Dr. Wallace's findings. Second, he provided objective evidence of that finding, which is supported in the record. An ECG performed in August 2011 revealed tachycardia, left atrial enlargement, left ventricle hypertrophy, and nonspecific T wave abnormalities in August 2011. (R. 360). An ECG in October 2012 was normal, but in July 2013, an ECG revealed a pericardial effusion and moderate concentric left ventricular hypertrophy. Dr. Sarpolis also addressed Plaintiff's pain only with regard to "arthalgias," but the record establishes that Plaintiff's primary source of pain results from neuropathy.

The ALJ neither recognized nor resolved the limitations in Dr. Sarpolis' opinion, and the opinion should not have been afforded substantial weight or used as a basis to discredit Dr. Wallace. Furthermore, several of the errors present in Dr. Sarpolis' report are reflected in the ALJ's decision. For example, the ALJ inappropriately determined that the medical record indicated only intermittent slight elevated blood pressure, the ALJ failed to address the abnormalities found in Plaintiff's first and last ECG, and the ALJ gave no basis for rejecting Plaintiff's claims of neuropathic pain.

      b. *Dr. Al-Wawi*

As noted above, Dr. Al-Wawi was Plaintiff's primary treating physician and a source of a significant portion of Plaintiff's medical record. The ALJ gave only a cursory description of Dr. Al-Wawi's treatment notes. In that description, many of Dr. Al-Wawi's findings supportive of disability were not discussed. For example, the ALJ did not recognize that Plaintiff suffered decreased sensation in his extremities, that Plaintiff was prescribed Neurontin and Mobic, or that Dr. Al-Wawi routinely found Plaintiff positive for various unknown musculosketal and neurological symptoms. The ALJ also inappropriately determined that Plaintiff only had "intermittent slightly elevated blood pressure and sugar readings," and that the ECGs were

13

always within normal limits. The ALJ was not required to mention every piece of medical evidence from Dr. Al-Wawi, but he was not authorized to ignore "a line of evidence contrary to [his] conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)); see also *McCruter v. Bowen*, 791 F.3d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence.").

In addition to Dr. Al-Wawi's treatment notes, the record contains two statements from Dr. Al-Wawi asserting that Plaintiff is disabled. The ALJ discredited those statements as follows:

> Moreover, the opinion is inconsistent with his own findings based upon lack of prolonged walking, climbing causing pain which are only physical limitations given, and an insufficient explanation that is conclusory and unsupported by exam findings, signs, and symptoms.

The ALJ did not explicitly articulate his rationale for rejecting Dr. Al-Wawi's opinion, as he was required to do. Instead of assessing Dr. Al-Wawi's opinion in light of his treatment notes and the record, the ALJ string-cited Dr. Al-Wawi's entire treatment record and seemingly concluded that his findings were limited to those listed on the disability questionnaire itself. The ALJ set up a straw man, only to reject it for not containing "exam findings, signs, and symptoms."

Those "exam findings, signs, and symptoms," however, were contained throughout Dr. Al-Wawi's treatment notes and were the impairments which resulted in his opinion. The basis of Dr. Al-Wawi's opinion included Plaintiff's uncontrolled diabetes, "severe pain in lower extremities," "severe peripheral neuropathy," "severe hypertension," and decreased sensation in both lower extremities. The ALJ's failure to evaluate these findings or to explain how Dr. Al-Wawi's opinion was inconsistent with his own findings renders review impossible and the decision unsupported by substantial evidence.

### c. *Inconsistent Daily Activities*

The ALJ also generally discredited Dr. Al-Wawi, Dr. Wallace, and Plaintiff's allegations because Plaintiff's reported level of activity was inconsistent with "disabling symptoms and limitations." (R. 16). This finding is not supported by substantial evidence. Plaintiff reported occasionally attending church, rarely going out to eat, and being able to care for himself, but it is well established in this circuit that "participation in everyday activities of short duration" does not disqualify a Plaintiff from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). These activities also do not conflict with Plaintiff's claims concerning his pain or Dr. Wallace and Dr. Al-Wawi's assessments of his limitations.

### d. *Noncompliance*

The ALJ determined that Plaintiff's noncompliance with his treatment "suggests that the symptoms may not have been as limiting" as alleged. (R. 16.) "Refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). But, "'poverty excuses noncompliance,' such that noncompliance does not prevent a claimant from receiving benefit where the noncompliance is a result of the claimant's inability to afford treatment." *Bellew v. Acting Comm'r of Soc. Sec*, 605 F. App'x 917, 921 (11th Cir. 2015) (citing *Dawkins*, 848 F.2d at 1212 – 14). Thus, where "the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Id*.

In this case, the record contains significant evidence that Plaintiff is financially unable to comply with his prescribed treatment. For example, Dr. Al-Wawi was providing Plaintiff with as

many free samples as he could while attempting to enroll him in assistance programs. (R.314, 316, 317). Plaintiff also went to the Emergency Room on multiple occasions upon running out of his medication. The ALJ questioned Plaintiff about his trips to the hospital, and Plaintiff responded that he receives his insulin from free samples. The ALJ failed to consider Plaintiff's ability to pay for his medications, therefore, substantial evidence does not support an inference that Plaintiff's noncompliance contradicts his alleges symptoms.

### e. *The Role of Physician Opinions*

Finally, the ALJ and Respondent both assert that Dr. Al-Wawi's and Dr. Wallace's opinions concerning Plaintiff's functional limitations are of limited value because the legal question of disability is reserved to the Commissioner. It is well established that "we are concerned here with the doctors' evaluations of [Plaintiff's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This means that a physician's legal conclusion regarding whether a Plaintiff is disabled may be rejected, but opinions concerning the severity of symptoms is medical in nature and not subject to rejection absent good cause.

Here, the ALJ alternatively rejected Dr. Wallace"s and Dr. Al-Wawi's opinion statements in light of their assertion that Plaintiff was disabled. The ALJ was authorized to do so, and neither doctor's opinion that Plaintiff could not perform sedentary work was entitled to weight. However, the ALJ was not authorized to reject their opinions concerning the severity of Plaintiff's symptoms. See *Shaw*, 392 F. App'x at 688. The doctors opined that Plaintiff was significantly limited in his ability to stand, walk, and sit. (R. 294, 362). Rather than being the type of legal conclusion the ALJ is entitled to reject, these are medical opinions concerning Plaintiff's physical capabilities and limitations in light of his impairments. The ALJ did not

address these limitations or otherwise provide a specific reason for rejecting them and failed to incorporate them into his RFC. This decision is not based on substantial evidence.

## CONCLUSION

In sum, Plaintiff demonstrated that he suffers from multiple diseases including uncontrolled diabetes, hypertension, and neuropathy. Based on these diseases, Plaintiff's treating physician and a consulting physician both opined that he suffers significant limitations that would limit his ability to work. The ALJ discredited these opinions and provided various reasons for doing so, but these reasons are unsupported in the record and do not constitute "good cause." The ALJ also did not adequately discuss the record of Plaintiff's treating physician, and inappropriately attributed substantial weight to an agency reviewer. Therefore, the ALJ's residual function capacity finding is not supported by substantial evidence.

As it is recommended that this case be remanded at step three, the Court declines to address Plaintiff's remaining step-four and step-five claims. These remaining claims concern what jobs Plaintiff can perform with the stated RFC, but that RFC is not supported by substantial evidence.

After a careful review of the record, it is **RECOMMENDED** that the Commissioner's decision be **REMANDED** pursuant to "sentence four." Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 17th day of May, 2016.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge